IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERT E. MURRAY**,<br>An individual,<br>47626 Meadowview Drive,<br>St. Clairsville, Ohio 43950; | Case No. 2:13-cv-01066-GLF-TPK |
| **MURRAY ENERGY CORPORATION**,<br>An Ohio Corporation,<br>46226 National Road<br>St. Clairsville, Ohio 43950 | Judge Gregory L. Frost |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | (Jury Demand Endorsed Hereon) |
| **THEHUFFINGTONPOST.COM, INC.**,<br>A Delaware Corporation,<br>c/o agent Corporation Service Co.<br>2711 Centerville Rd., Ste. 400<br>Wilmington, Delaware 19808<br><br>770 Broadway, 4th Floor<br>New York, New York 10003-9558; | |
| **WILFRED MICHAEL STARK III**,<br>An individual,<br>Contributor, The Huffington Post<br>2135 Grayson Place<br>Falls Church, Virginia 22043; | |
| **ARIANNA HUFFINGTON**,<br>An individual,<br>President/Editor-in-Chief, The Huffington Post<br>300 North Carmelina Avenue<br>Los Angeles, California 90049-2702; | |
| **ROY SEKOFF**,<br>An individual,<br>Editor, The Huffington Post<br>9318 Kirkside Road<br>Los Angeles, California 90035-4127; | |

| | |
|---|---|
| **STUART WHATLEY**, <br> An individual, <br> Executive Blog Editor, The Huffington Post <br> 245 E. 63rd St., Apt. 424 <br> New York, NY 10065-7454 <br><br> **JASON CHERKIS**, <br> An individual, <br> Reporter, The Huffington Post <br> 2390 Champlain St., No. 3 <br> Washington, D.C. 20009 <br><br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Now come Plaintiffs, Robert E. Murray and Murray Energy Corporation (together, "the Murray Plaintiffs") and for their First Amended Complaint against Defendants, TheHuffingtonPost.com, Inc., Arianna Huffington, Roy Sekoff, Stuart Whatley, Jason Cherkis, and Wilfred Michael Stark, III (together, "Defendants"), state and allege as follows:

## NATURE OF THE CASE

1.  This is an action for defamation and false light invasion of privacy. Defendants published numerous false and defamatory statements concerning the Plaintiffs Robert E. Murray and Murray Energy Corporation in a September 20, 2013 Internet article titled "*Meet the Extremist Coal Baron Bankrolling Ken Cuccinelli's Campaign*" (the "Article"). The Article appeared on the Internet website known as The Huffington Post (www.huffingtonpost.com), which is owned and operated by Defendant TheHuffingtonPost.com, Inc., and is marketed and made freely available to a worldwide audience, including on the organization's Internet website. Counsel for Defendant Stark has since posted a hyperlink to the Article on a different website, www.grist.com, in connection with counsel's derogatory comments about the merits of this lawsuit. The false and defamatory statements in the Article, described below, were published by Defendants to the world on The Huffington Post (and then republished to a new audience by

2

Defendant Stark's counsel on www.grist.com) without any legal privilege, and with knowledge or reckless disregard of their falsity.  These false and defamatory statements have severely harmed the reputation of the Murray Plaintiffs, caused great mental anguish and emotional distress for Plaintiff Robert E. Murray and his family members, and have cast the Murray Plaintiffs in a false light before the public.

## PARTIES

**Plaintiffs**

2. Plaintiff Robert E. Murray ("Murray") is an individual residing at 47626 Meadowview Drive, St. Clairsville, Belmont County, Ohio, 43950, and is the President, Chief Executive Officer, and Chairman of Plaintiff Murray Energy Corporation.

3. Plaintiff Murray Energy Corporation ("Murray Energy") is a corporation incorporated under the laws of the State of Ohio, with its principal office located at 46226 National Road, St. Clairsville, Belmont County, Ohio, 43950.

**Defendants**

4. Defendant TheHuffingtonPost.com, Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal office located at 770 Broadway, 4th Floor, New York, New York, 10003-9558.  TheHuffingtonPost.com, Inc. is a media company that owns and operates a website called The Huffington Post (www.huffingtonpost.com).  On information and belief, TheHuffingtonPost.com, Inc. exercises corporate control over, and provides basic business policy, editorial services, quality control, production and other services to The Huffington Post.

5. Defendant Wilfred Michael Stark III ("Stark") is an individual residing at 2135 Grayson Place, Falls Church, Virginia, 22043.  On information and belief, Stark is a frequent

3

contributor of Internet articles to The Huffington Post and is an independent contractor of Defendant TheHuffingtonPost.com, Inc.  Stark is described as a "Journalist" in the byline of the Article.

6. Defendant Arianna Huffington ("Huffington") is an individual residing at 300 North Carmelina Avenue, Los Angeles, California, 90049-2702.  On information and belief, Huffington is the President and Editor-in-Chief of The Huffington Post, and is an employee of Defendant TheHuffingtonPost.com, Inc.

7. Defendant Roy Sekoff ("Sekoff") is an individual residing at 9318 Kirkside Road, Los Angeles, California, 90035-4127.  On information and belief, Sekoff is the Editor of The Huffington Post, and is an employee of Defendant TheHuffingtonPost.com, Inc.

8. Defendant Stuart Whatley ("Whatley") is an individual residing at 245 E. 63rd St., Apt. 424, New York, NY, 10065-7454.  On information and belief, Whatley is the Executive Blog Editor of The Huffington Post, and is an employee of Defendant TheHuffingtonPost.com, Inc.

9. Defendant Jason Cherkis ("Cherkis") is an individual residing at 2390 Champlain St, No. 3, Washington, D.C. 20009.  On information and belief, Cherkis is a news reporter for The Huffington Post and is an employee of Defendant TheHuffingtonPost.com, Inc.

**VENUE**

10. Plaintiffs originally brought this action in the Court of Common Pleas, Belmont County, Ohio, pursuant to Ohio Civ. R. 3(B)(3), (6), (7), (12), and 3(E) because the Defendants conducted activity in Belmont County giving rise to the claim for relief; because all or part of the claim for relief arose in Belmont County; because Murray and Murray Energy reside in Belmont County; and because Belmont County is the proper venue as to any one party other than a nominal party, or as to any one claim for relief.  On October 25, 2013, Defendants

TheHuffingtonPost.com, Inc., Huffington, Sekoff, and Whatley filed a Notice of Removal in this Court. The United States District Court for the Southern District of Ohio, Eastern Division, embraces Belmont County, where Plaintiffs' action was filed, making this Court a proper venue for this removed case. 28 U.S.C. § 115(b)(2), 1441(a).

## JURISDICTION

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a): there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000. Further, no party in interest properly joined and served as a defendant in this action is a citizen of Ohio, the state in which the action was brought. *See* 28 U.S.C. § 1441(b)(2). This Court's exercise of jurisdiction over the Defendants is consistent with due process and with Ohio's long-arm statute.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. On or about September 20, 2013, Defendants published an Internet article on The Huffington Post website titled "*Meet the Extremist Coal Baron Bankrolling Ken Cuccinelli's Campaign.*" The Article, which is located and may be viewed at http://www.huffingtonpost.com/mike-stark/meet-the-extremist-coal-baron_b_3948453.html, was published under the byline of Defendant Stark (who is identified in the byline of the Article as a "Journalist") and contained numerous false and defamatory statements concerning the Murray Plaintiffs. A copy of the Article is attached as **Exhibit A**.

13. On information and belief, although Defendants published the Article under the byline of Defendant Stark, some or all of the content for the Article was originally researched and/or drafted by Defendant Cherkis, who is a reporter employed by Defendant TheHuffingtonPost.com, Inc. Accordingly, on information and belief, The Huffington Post was responsible, in whole or in part, for the creation and development of the content of the Article.

5

14. On information and belief, at some time after Defendant Cherkis researched and/or drafted some or all of the content for the Article, an unknown employee of Defendant TheHuffingtonPost.com, Inc. reviewed Defendant Cherkis's work product and determined that it lacked sufficient verifiable information.

15. On information and belief, Defendant Cherkis has a history of fabricating stories and quotes, and badgering or misquoting sources. This history was either known or reasonably should have been known by Defendant TheHuffingtonPost.com, Inc., Defendant Cherkis's current employer.

16. Specifically, Defendant Cherkis has been accused of fabricating quotes and making serious and misleading misquotes, and there have been complaints concerning the overall veracity of Defendant Cherkis's published stories in the following respects, among others:

    a. In or around 1997, Defendant Cherkis was accused of fabricating quotes in an article entitled "Congressional High: Killing time on Capitol Hill, D.C. high-school kids pray for class." The misquoted individuals promptly complained to the editor following publication.

    b. In or around 1999, Defendant Cherkis faced several more allegations of fabrication. Defendant Cherkis published an article entitled "Queen of Mean" based primarily on a landlord-tenant attorney born with a mild birth defect. Surprisingly, Defendant Cherkis portrayed the attorney's physical awkwardness in print after he badgered her with inappropriate questions used to fabricate a story revolving around the attorney's reputation for insensitivity toward tenants.

    c. Also in or around 1999, Defendant Cherkis misquoted a popular band, leading to more public complaints.

6

   d. In or around 2003, Defendant Cherkis published a story concerning an altercation at his then current residence between his brother and another housemate. Again, Defendant Cherkis faced complaints and assertions that his story was inaccurate.

   e. In or around 2011, realizing the inordinate number of complaints against Defendant Cherkis, another journalist, Mark Judge, working for *Real Clear Politics*, researched and wrote an article about Defendant Cherkis. This article assembled the numerous professional complaints against Defendant Cherkis that included misquoting sources, fabricating sources, and fabricating entire stories.

   f. On or around September 30, 2011, Defendant Cherkis published a patently false article alleging that Texas governor and then-presidential candidate Rick Perry had faced an extensive federal criminal inquiry for insider trading nearly two-decades earlier. Defendant Cherkis had no named source and relied exclusively on an anonymous attorney. All reliable and verifiable sources indicated Defendant Cherkis fabricated the article. The Securities and Exchange Commission, the United States Attorney, William Blagg, and the FBI all denied the veracity of Defendant Cherkis's report.

   g. During Defendant Cherkis's employment, The Huffington Post has refused to publish several of Defendant Cherkis's stories because of a paucity of evidence.

17. On information and belief, at some time after an unknown employee of Defendant TheHuffingtonPost.com, Inc. determined that Defendant Cherkis's work product lacked sufficient verifiable information, a request was made to Defendant Stark for him to post the Article on The Huffington Post under his byline (as a third-party blogger), rather than have the Article posted on The Huffington Post under the byline of Defendant Cherkis.

18. The Huffington Post's Terms and Conditions, *available at* www.huffingtonpost.com/terms.html, provide, at Paragraph 2(c), that third-party bloggers such as Defendant Stark must agree that they will not publish "falsehoods or misrepresentations" or submit material that is "defamatory, libelous, *** harassing, hateful," or gives rise to civil liability or is "otherwise inappropriate." The Terms and Conditions also provide that The Huffington Post does not endorse or guarantee the "accuracy and completeness" of opinions "and other statements expressed by users and third parties (e.g. bloggers)."

19. The false and defamatory statements contained in the Article, some of which were republished from other sources, include, but are not limited to, assertions that: (i) Murray "announced he was firing more than 150 of his miners" following and in response to President Obama's reelection in 2012; (ii) Murray's firing of 150 of his miners was the "fulfillment of a promise" – *i.e.*, a promise to fire his miners if Obama won reelection; (iii) Murray is an "extremist"; (iv) Murray "fires his workforce wholesale in fits of spite when electoral results disappoint him"; and (v) other statements contained in the Article (collectively, "the Defamatory Statements").

20. The defamatory Article published under Defendant Stark's byline as "Journalist" includes embedded hyperlinks to the following content on other websites:

- An article from the *Washington Post* website, *available at*:

  http://apps.washingtonpost.com/g/page/local/virginia-attorney-general-ken-cuccinellis-involvement-with-star-scientific/291/

- The *Virginia Public Access Project*'s website archive for "Donations Reported by Cuccinelli for Governor-Ken," *available at:*

  http://www.vpap.org/committees/profile/money_in_raw/3540?filter_schedule=A

8

- An article from the *Intelligencer: Wheeling News-Register* website, *available at*: http://www.news-register.net/page/content.detail/id/589834/Obama--Gas-Raise-Ire-Of-Murray.html?nav=515

- An article from the *Bluefield Daily Telegraph*, *available at*: http://bdtonline.com/local/x1253343507/Bluefield-Coal-Show-off-to-provocative-start

- An article titled "Coal Miner's Donor" from the *New Republic* website, *available at*: http://www.newrepublic.com/article/politics/108140/coal-miners-donor-mitt-romney-benefactor

- An article from the *Cleveland Plain Dealer* website, *available at*: http://www.cleveland.com/open/index.ssf/2012/08/coal_mine_owner_bob_murray_def.html

- An article from the Business section of the *Washington Post* website, *available at*: http://www.cleveland.com/open/index.ssf/2012/08/coal_mine_owner_bob_murray_def.html

- An article from the HuffingtonPost.com "Business" page, *available at*: http://www.huffingtonpost.com/2012/10/09/murray-energy-romney_n_1950724.html

- The "Welcome" page from Plaintiff Murray Energy Corporation's website, *available at*:   http://www.ohiovalleycoal.com/map.shtml

21.     The above-referenced "Welcome" page from Plaintiff Murray Energy Corporation's website, which is an embedded hyperlink in the defamatory Article published

9

under Defendant Stark's byline as "Journalist," includes a link to an archive of Press Releases issued by Murray Energy Corporation, *available at*: http://www.ohiovalleycoal.com/press.shtml. The Press Releases page, in turn, includes contact information for Robert Edward Murray, Vice President of Marketing, Sales, and External Affairs for Murray Energy Corporation, as well as an e-mail address for media inquiries, media@coalsource.com.

22. None of the Defendants or their representatives contacted any representative of the Murray Plaintiffs before publication of the Defamatory Statements to verify the accuracy of those statements or other assertions made in the Article. On information and belief, none of the Defendants or their representatives made any effort to verify the accuracy of the Defamatory Statements before publishing them on The Huffington Post, beyond a review of other information circulating on the Internet, including the information listed in Paragraph 20 above for which hyperlinks are included in the Article.

23. The Defamatory Statements were published by Defendants, quite literally, to the entire world through The Huffington Post website. Indeed, Bloomberg recently reported that The Huffington Post website had almost 72 million unique visitors and 595 million page views in the month of July 2013 alone. A copy of this Bloomberg article is attached as **Exhibit B**.

24. On November 1, 2013, David Halperin, who is among the counsel who have appeared for Defendant Stark in this action, published a blog post on the website www.grist.com ("A Beacon in the Smog"). Mr. Halperin's blog post, *available at* http://grist.org/article/blogger-asks-court-dismiss-libel-case-over-article-linking-cuccinelli-to-coal-ceo-murray/, was titled "Blogger asks Court: Dismiss Libel Case Over Article Linking Cuccinelli to Coal CEO Murray" (hereinafter the "Halperin Blog Post") and included a hyperlink to the defamatory Article at issue in this lawsuit. A copy of the Halperin Blog Post is attached hereto as **Exhibit C**.

25. The Defamatory Statements in the Article intended to convey, and did convey, to the average reader of The Huffington Post (and to any reader of the Halperin Blog Post who used the embedded hyperlink to access and review the Article) the false and harmful impressions that Murray is an "extremist" and that Murray cares so little for his employees that he would fire them *en masse* just to make a political statement. These are false and defamatory assertions that have had, and will continue to have, extremely adverse effects on Murray's reputation, his family, and his business interests.

26. In reality, Murray has a reputation for integrity and honesty and has been a leader in the coal industry and business community, adhering to an "open door policy" with his employees and working tirelessly to create jobs and preserve the livelihoods of thousands of coal miners in southeastern Ohio. Today, Murray Energy's independently operated subsidiary companies employ about 3,400 people; mine coal in Ohio, Utah, Kentucky, and Illinois, operate river/truck/rail terminals on the Ohio River; rebuild long-walls and other underground mining equipment; and own additional coal properties in Pennsylvania and West Virginia.

27. Murray, in part because he has worked in the coal industry since age 17, is a supporter of the coal industry and the benefits that states and localities, including southeastern Ohio, receive from having a healthy coal industry. Murray has worked tirelessly on behalf of his employees to ensure that they can continue to work in high-paying jobs under safe conditions, consistent with applicable regulations and so that they can continue to be productive members of society. The reputations of the Murray Plaintiffs and Murray's other business interests in the local and business community are of paramount importance to their continuing operations.

28. The ability of the Murray Plaintiffs to borrow money from lenders on the private market, to secure performance bonds as required by federal and state law, and to enter into long-

term agreements with utility companies is, for the most part, based on Murray's reputation for honesty, as well as the strength of Murray's character and the fiscal soundness of Murray's companies. The reputation of Murray is also an extremely important part of his relationship with his employees, a relationship that has allowed Murray's business operations to expand and succeed in a harsh business climate.

29.     The Defamatory Statements are nothing more than a series of false and very damaging statements regarding the Murray Plaintiffs.

30.     Murray is neither a public figure nor a limited public figure in that he has neither voluntarily sought public or media attention, nor has he achieved such status by reason of the notoriety of his achievements.

31.     The Defamatory Statements were understood and interpreted by readers of The Huffington Post to be assertions of fact, not opinion. The Article does not include traditional indicia of "opinion" speech, such as appearance on an "Editorial" or "Opinion" page, nor does the author employ qualifying phrases in the Article such as "in my opinion" or "in my view." Instead, the factual assertions in the Article appear under the byline of an individual described as a "Journalist," on the "Blog" page of The Huffington Post, which is advertised as containing "real-time analysis" from contributors to The Huffington Post. Moreover, as noted in Exhibit B, The Huffington Post has recently won a Pulitzer Prize for news reporting, which would lead readers to believe that it is a source of reliable and factual news reporting. In content on The Huffington Post concerning that award, The Huffington Post's Senior Media Reporter described The Huffington Post as a "digital news outlet," a "digital news operation," and an "online only news organization," which would further encourage readers to believe that The Huffington Post is a source of reliable and factual news reporting. See Michael Calderone, *Huffington Post*

*Awarded Pulitzer Prize* (April 16, 2012), *available at*: http://www.huffingtonpost.com/2012/04/16/huffington-post-pulitzer-prize-2012_n_1429169.html.

32. The common usage and meaning of the Defamatory Statements are likely to give rise to clear, unambiguous factual implications.

33. The Defamatory Statements are objectively capable of proof or disproof, and the context in which the Defamatory Statements were made would lead the reasonable reader of The Huffington Post to believe that the Defamatory Statements are assertions of fact, not expressions of opinion.

## COUNT I
## DEFAMATION

34. The Murray Plaintiffs restate and reallege Paragraphs 1-33 as if fully set forth herein.

35. Defendants published the Defamatory Statements to a wide and varied audience, including, but not limited to, all readers and viewers of The Huffington Post website.

36. The Defamatory Statements contain numerous false statements of fact concerning the Murray Plaintiffs, including, but not limited to, assertions that: (i) Murray "announced he was firing more than 150 of his miners" following and in response to President Obama's reelection in 2012; (ii) Murray's firing of 150 of his miners was the "fulfillment of a promise" – i.e., a promise to fire his miners if Obama won reelection; (iii) Murray is an "extremist"; (iv) Murray "fires his workforce wholesale in fits of spite when electoral results disappoint him"; and (v) other statements contained in the Article.

37. Upon information and belief, Defendants caused the Defamatory Statements to be published with knowledge of the falsity of the statements or with reckless or negligent disregard as to the truth or falsity of said statements.

38. Upon information and belief, Defendants, acting on their own and/or through their agents, continue to broadcast or publish the Defamatory Statements, and have made the Defamatory Statements available to additional readers throughout the world, including residents of Belmont County, on Internet websites.

39. The Defamatory Statements are defamatory *per se* in that, on their face, they reflect upon the Murray Plaintiffs' reputation and character in a manner that: (1) injures Murray's reputation and subjects Murray to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Murray's trades and/or businesses. In the alternative, the Defamatory Statements are defamatory *per quod* in that they are capable of being interpreted as reflecting upon Murray's reputation and/or character in a manner that: (1) injures Murray's reputation and/or exposes him to public hatred, ridicule, shame, or disgrace; and (2) adversely affects his trades and/or businesses.

40. The Defamatory Statements were published with malice, and without any lawful privilege or basis.

41. Publication of the Defamatory Statements has caused and will continue to cause Murray and members of Murray's family to suffer great mental anguish and emotional distress.

42. Publication of the Defamatory Statements has caused Murray to suffer severe personal and professional humiliation and injury to his reputation in the community – a reputation that Murray has built over a long career as a leader in America's coal mining industry.

43. Murray has been damaged by the Defendants' publication of the Defamatory Statements because they impute dishonesty and immorality regarding his personal and professional character and suggest that he holds unpopular ["extremist"] views.

44. Murray Energy has been damaged by the Defendants' publication of the Defamatory Statements because they falsely suggest that Murray Energy engages in illegal, unethical, or immoral business practices.

45. Murray Energy's standing in the business community as a respected corporate citizen has been damaged by publication of the Defamatory Statements.

46. Publication of the Defamatory Statements will cause the Murray Plaintiffs to encounter more difficulty in securing performance surety bonds from lenders to support Murray's businesses and may cause the Murray Plaintiffs to have to collateralize these bonds at higher levels.

47. Publication of the Defamatory Statements will cause lenders to be less willing to engage in financing transactions with the Murray Plaintiffs, thereby preventing them from gaining access to capital needed to operate their businesses or making it more difficult and expensive for them to obtain such capital.

48. Publication of the Defamatory Statements will cause the Murray Plaintiffs to encounter difficulty in participating in discussions with public officials, including regulatory agencies, regarding matters of concern to the Murray Plaintiffs' businesses.

49. Publication of the Defamatory Statements will cause the Murray Plaintiffs to suffer a loss of business opportunities and loss of potential and/or existing customers for their businesses.

## COUNT II
## FALSE LIGHT INVASION OF PRIVACY

50. The Murray Plaintiffs restate and reallege Paragraphs 1-49 as if fully set forth herein.

51. The Defamatory Statements constitute false light invasion of privacy in that the Defamatory Statements have subjected the Murray Plaintiffs to unreasonable and highly objectionable publicity by attributing to them characteristics, conduct or beliefs that are false, thereby placing them in a false light before the public.

52. The false light in which the Murray Plaintiffs have been placed due to publication of the Defamatory Statements would be highly offensive to a reasonable person.

53. Defendants had knowledge of the falsity of the Defamatory Statements or acted in reckless disregard as to the falsity of the Defamatory Statements and the false light in which the Murray Plaintiffs would be placed.

54. Publication of the Defamatory Statements has caused and will continue to cause Murray and members of Murray's family to suffer great mental anguish and emotional distress.

55. Publication of the Defamatory Statements has caused Murray to suffer severe personal and professional humiliation and injury to his reputation in the community – a reputation that Murray has built over a long career as a leader in America's coal mining industry.

56. Murray has been damaged by the Defendants' publication of the Defamatory Statements because they impute dishonesty and immorality regarding his personal and professional character and suggest that he holds unpopular ["extremist"] views.

57. Murray Energy has been damaged by the Defendants' publication of the Defamatory Statements because they falsely suggest that Murray Energy engages in illegal, unethical, or immoral business practices.

58.     Murray Energy's standing in the business community as a respected corporate citizen has been damaged by publication of the Defamatory Statements.

59.     Publication of the Defamatory Statements will cause the Murray Plaintiffs to encounter more difficulty in securing performance surety bonds from lenders to support Murray's businesses and may cause the Murray Plaintiffs to have to collateralize these bonds at higher levels.

60.     Publication of the Defamatory Statements will cause lenders to be less willing to engage in financing transactions with the Murray Plaintiffs, thereby preventing them from gaining access to capital needed to operate their businesses or making it more difficult and expensive for them to obtain such capital.

61.     Publication of the Defamatory Statements will cause the Murray Plaintiffs to encounter difficulty in participating in discussions with public officials, including regulatory agencies, regarding matters of concern to the Murray Plaintiffs' businesses.

62.     Publication of the Defamatory Statements will cause the Murray Plaintiffs to suffer a loss of business opportunities and loss of potential and/or existing customers for their businesses.

**WHEREFORE,** Plaintiffs respectfully request, as to Counts I and II:

1.     Judgment for general damages in favor of the Murray Plaintiffs and against the Defendants in an amount to be determined at trial, but in excess of $75,000.00.

2.     Judgment for special damages in favor of the Murray Plaintiffs and against Defendants in an amount to be determined at trial, but in excess of $75,000.00.

3.     Judgment for punitive damages in favor of the Murray Plaintiffs and against Defendants in an amount to be determined at trial, but in excess of $75,000.00;

4. An award to the Murray Plaintiffs of attorneys' fees and costs of suit; and

5. Such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS ACTION**.

Dated: November 11, 2013

>Respectfully submitted,
>
>/s/ Mark S. Stemm
>Mark S. Stemm, Trial Attorney (0023146)
>L. Bradfield Hughes (0070997)
>Jared M. Klaus (0087780)
>PORTER WRIGHT MORRIS & ARTHUR LLP
>41 South High Street, Suite 3200
>Columbus, Ohio 43215
>(614) 227-2092 (telephone)
>(614) 227-2100 (facsimile)
>mstemm@porterwright.com
>bhughes@porterwright.com
>jklaus@porterwright.com
>
>Michael O. McKown (0013378)
>Gary M. Broadbent (0083876)
>46226 National Road
>St. Clairsville, Ohio 43950
>(740) 338-3100 (telephone)
>(740) 338-3411 (facsimile)
>
>*Counsel for Plaintiffs*
>
>Of counsel:
>Kevin N. Anderson
>FABIAN & CLENDENIN, PC
>215 South State Street, Suite 1200
>Salt Lake City, UT 84111-2323
>(801) 323-2225 (telephone)
>(801) 596-2814 (facsimile)
>kanderson@fabianlaw.com